NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

Richard M. BROWN, D.O. and Donald R. Janower, D.O. d/b/a Park General Clinic, Respondent.

No. 75-2056.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 11, 1976.

Decided Dec. 20, 1976.

Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Jay E. Shanklin, Michael F. Messitte, Washington, D.C., Bernard Gottfried, Detroit, Mich., for petitioner.

Leonard Meldman, Detroit, Mich., for respondent.

Before WEICK and LIVELY, Circuit Judges, and CECIL, Senior Circuit Judge.

PER CURIAM.

This case is before the Court upon application of the National Labor Relations Board for enforcement of its order issued on June 17, 1975, against the Respondent, Richard M. Brown and Donald R. Janower, a partnership doing business as Park General Clinic.

The partners are osteopathic physicians who are engaged in the Detroit area in the operation of proprietary health care clinics for the purpose of rendering osteopathic medical services to patients. They maintained six clinics and, in the operation of these clinics, they employed: other osteopathic physicians, on salaries; a business manager and assistant; an accountant; medical assistants; secretaries and receptionists. During the course of its operations of services to patients in the calendar year 1973, the Respondent received gross revenues in excess of $750,000.

The unfair labor practices, which are the subject of the Board's order, grew out of a dispute over wages between Joan Stein, employed as a medical assistant at Respondent's Lincoln Park Clinic, and Mervin Sternberg, Respondent's business manager. Joan was first employed at the Clinic in June of 1970. This employment continued

until July 27, 1974, at which time she left her employment because of the imminent birth of a baby.

At the time of her leaving the Clinic, she was working twelve hours a week and being paid for fifteen hours. One extra hour was allowed as reimbursement for baby sitting. The other two extra hours were unexplained but, as she says, she assumed it was a raise in pay and she did not report it. The baby did not survive and Joan sought renewal of her employment with the Clinic. Arrangements were made and she returned to her employment with the Clinic on Monday, October 21, 1974.

In the meantime, it was discovered by management, or so it was claimed, that the payment of two extra hours before her separation in July of 1974, was an error in bookkeeping. Mr. Sternberg, backed up by Dr. Janower, refused to continue these three hours of extra payment to Joan. Joan insisted that her pay was being reduced and this became, on the part of Joan, the subject of unbelievably heated and emotional discussions with Mr. Sternberg.

There were such discussions between Joan and Mr. Sternberg on Monday and Tuesday of October 21st and 22nd. Joan did not work on Wednesday and, there being no solution to her problem, she called the Labor Board. She was told that her pay could be reduced to two dollars an hour, that being the applicable minimum wage rate. She then called James Thornburg, business representative of Local 79, Service Employees International Union, and explained her wage situation to him. He promised to send to her Union literature including authorization cards.

On this same day Joan talked about her wages to Rosemary Mazglad and Jerilyn McMahon, two fellow medical assistants. Later, the three met at the McMahon home and discussed Joan's wages, the wages of the medical assistants and the Union. On Thursday, October 24th, Joan had another unproductive meeting with Sternberg. On her return home she found the Union literature.

On Friday, October 25th, Joan brought the Union literature to work with her and talked to McMahon and two other employees about their interest in Union organization. She also talked to Dr. Michael Sampson, a salaried employee of the Clinic. In one of her conversations with him she explained the situation with reference to her pay and told of her Union activity. Early that afternoon Rosemary Mazglad accompanied Joan to Mr. Sternberg's office and they discussed Joan's wages and, to some extent, the wages of other Medical assistants. Later that afternoon Joan had Union cards and literature distributed to employees at the Clinic. Nine or ten cards were signed and returned to her in the parking lot.

When Joan came to work on Monday, October 28th, she was told to report to Mr. Sternberg's office. After some discussion in which Mr. Sternberg told Joan that he was displeased with her bringing Rosemary Mazglad to his office, he terminated her employment.

These are the basic facts upon which the Administrative Law Judge found that the Respondent had engaged in unfair labor practices in violation of Sections 8(a)(1) and (3) of the Act. The Board confirmed the decision of the Administrative Law Judge and issued an order in the usual form including a provision for the full reinstatement of Joan to her former or equivalent position and reimbursement for any loss of earnings.

The issue before us is whether there is substantial evidence on the record to support the finding of the Board that Respondent discharged Joan because of protected concerted activities in violation of Section 8(a)(1) of the National Labor Relations Act (29 U.S.C. Sec. 158(a)(1)) and in violation of Section 8(a)(3) of the Act. (29 U.S.C. Sec. 158(a)(3)).

" * * * The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive. * * * " (29 U.S.C. Sec. 160(e))

We said in *N.L.R.B. v. Buckhorn Hazard Coal Corporation*, 6 Cir., 472 F.2d 53, 55, "If the Board's findings are supported by substantial evidence, this Court must accept them even though we might have reached a different result had the matter been before us de novo."

In *N.L.R.B. v. Jamestown Sterling Corp.*, 2 Cir., 211 F.2d 725, 726, the Court said, " * * * If employees are discharged partly because of their participation in a campaign to establish a union and partly' because of some neglect or delinquency, there is nonetheless a violation of the National Labor Relations Act, 29 U.S. C.A. Sec. 151 et seq. * * * "

In the light of these authorities and upon review of the record, we conclude that, upon consideration of the record as a whole, the findings and conclusions of the Administrative Law Judge and the Board are supported by substantial evidence.

As to the "concerted activities", the subject of the Sec. 8(a)(1) violation there was direct confrontation of Mr. Sternberg by Joan and Rosemary Mazglad on Friday, October 25th. At this time Rosemary talked on behalf of Joan's wages and Joan spoke on behalf of Rosemary. Together they mentioned the other medical assistants. After Joan's termination several of the medical assistants came to Mr. Sternberg's office and protested Joan's discharge and threatened to walk out. While this was after the discharge, it does indicate that there was prior concerted activity among the employees which prompted Rosemary Mazglad to go with Joan to see Mr. Sternberg.

The Sec. 8(a)(3) violation depends on whether Mr. Sternberg knew of the Union activity at the time of the discharge. To support this finding, the Administrative Law Judge draws an inference from circumstantial evidence.

On Friday afternoon before the discharge on Monday, Joan circulated or had others to circulate Union literature including authorization cards to the employees. She received signed cards at the parking lot. This was around closing time and it would take a stretch of the imagination to believe that management would not see or hear about this.

Shortly after Joan told Dr. Sampson of her Union activity she saw him talking to Mr. Sternberg's assistant and heard him mention her name. After that Dr. Sampson went to lunch with Mr. Sternberg. At her conference with Mr. Sternberg on Friday afternoon, Joan said she told him that she was sure Dr. Sampson had told him what she had told Dr. Sampson. She was referring to what she told Dr. Sampson about the Union and his lunch with Mr. Sternberg. His response according to Joan's testimony,

"Mr. Sternberg nodded his head. I didn't hear a yes out of him, but it was more of a uh huh."

We conclude that the inferences drawn from these circumstances were warranted.

The order of the Board is enforced and we remand the case to the Board with instructions to determine the rate of wages at which Joan is to be reimbursed for lost earnings. The Board should also determine what credit, if any, the Respondent is entitled to for earnings made by Joan during the period since the discharge.

### APPENDIX

#### Conclusions of the Administrative Law Judge

"Conclusions—The Reasons for the Discharge

"Respondent contended that Sternberg was frustrated and annoyed by Joan Stein's refusal to accept his position in regard to her pay and by her repeated arguments on that issue. Such frustration and annoyance are both plausible and understandable. I do not doubt that one of the reasons for the discharge was this conduct by Stein. However, I find, based upon a complete evaluation of the record testimony and Respondent's brief in the light of my observation of the witnesses' demeanor during the course of the hearing, that Respondent was motivated to discharge Joan Stein for two

additional reasons, her union activity and her protected concerted activity. Both of these reasons were unlawful and both were substantial factors in the decision to discharge Stein. Cf. *Erie Strayer Company*, 213 NLRB No. 45 (1974). As previously discussed, Respondent disapproved of its employees acting concertedly for the benefit of any or all of them. Joan Stein was engaged in both a concerted nonunion activity, and union activity. The former was engaged in during a face-to-face confrontation with Sternberg and was expressly referred to by him in the discharge interview. The latter, I have found, was also known to Respondent and was impliedly referred to in that same interview. Had but the one lawful reason existed, I do not believe that Respondent would have terminated Stein. In this regard I note that Sternberg tolerated Stein's arguments for three consecutive workdays without discharging her or even threatening to do so. Had these arguments alone reached the point where, in Sternberg's mind, they warranted discharge, or begun to approach that point, it could reasonably and logically have been expected that Sternberg would have so warned Stein. Sternberg did not do this however, and the breaking point was not reached until Stein involved another employee in protected concerted activity and engaged in conduct which, I have found, gave rise to knowledge of Stein's union activity.

"I therefore find and conclude that the General Counsel has established by a preponderance of the credible evidence that Respondent discharged Joan Stein on October 28, 1974, in violation of Sections 8(a)(1) and (3) of the Act."